JAMES H. MILLS, *et als.*, Plaintiffs in Error, *vs.* EDMUND B. KELLOGG, *et al.*, Defendants in Error.

ERROR TO THE DISTRICT COURT OF RICE COUNTY.

A mortgage was given upon land to secure a debt. The mortgage stated the rate of interest the debt bore to be three per cent. per month until due, and five per cent. per month from due until paid. The mortgage was duly recorded, the record disclosing these facts. Subsequent incumbrances were taken upon the land by other parties. The interest was duly paid upon the first mortgage by the mortgagor until maturity. After which large payments were made by the mortgagor and received by the mortgagee, and by consent applied as interest accruing at large rates after maturity. Action was commenced to foreclose the first mortgage. Answers were put in by the mortgagor and the subsequent incumbrancers, alleging these payments, and claiming that they should be applied upon the damages after maturity at seven per cent. per annum, and the balance upon the principal. *Held*, That under the issue so made, no equities appeared in favor of the subsequent incumbrancers to entitle them to disturb the application of the payments to the interest after the due day of the debt, as made by the parties. *Held*, further, That the mortgagor having paid the money voluntarily in pursuance of the stipulation in his contract, could not be heard in an application to divert it into another channel.

The case of *Whitacre et al. vs. Fuller et al.*, 5 *Minn. R.*, 508, examined and distinguished from the one at bar.

The following are the facts in regard to the payments made on the note as found by the Court below—a jury trial having been waived:

*First.*—That the promissory note declared on in this action was made and delivered by the Defendant, James H. Mills, to L. S. Pease, the payee of said note, and that to secure the payment thereof said James H. Mills and Naomi C. Mills, his wife, executed and delivered to said Pease the indenture of mortgage as alleged in this complaint, and that said note was duly endorsed and delivered to the Plaintiff for a valuable and sufficient consideration and said mortgage was duly

vol vii.—60

assigned to the Plaintiffs by said Pease prior to the commencement of this action and as alleged in the complaint.

*Second.*—That on November 6th, 1857, the Defendant paid to the payee thereof, L. S. Pease, two hundred and forty dollars as and for the interest to the maturity of said note, at the rate of three per cent. per month; that the Defendant, James H. Mills, then and there requested the use of the sum of two thousand dollars, being the principal of said note, for a longer time, agreeing to pay therefor monthly the rate of four per cent. per month, that being the current rate of money at that time; that in consideration of said agreement the said Pease did grant to said Mills such indulgence and the further use of said money.

That in pursuance thereof the said Defendant paid to said Pease divers sums of money as and for such interest, and the same were so received and appropriated by said Pease, to wit : on December 9th, 1857, eighty dollars ; January 28th, 1858, eighty dollars ; February 20th, 1858, eighty dollars ; April 24th, 1858, seventy-four dollars ; May 6th, 1858, sixty-five dollars ; May 21st, 1858, eighty dollars ; May 22d, 1858, twenty-one dollars.

That on or about the twenty-fourth of February a new agreement and arrangement was made between the said Defendant and said Pease, whereby it was agreed that the principal of said note on and after May 6th, 1858, was to run at the rate of three per cent. per month, that being the current rate of money at that time, and that said Defendant agreed to pay said note, and thereupon said Pease granted to said Defendant the further use of said money.

That pursuant to said last mentioned agreement said Defendant paid to said Pease divers sums of money as and for the interest on said note at three per cent. per month, and that the same were so received and appropriated, to wit: on September 29th, 1858, one hundred dollars ; on September 30th, 1858, fifty dollars ; on October 4th, 1858, fifty dollars ; October 15th, 1858, one hundred dollars.

That on February 12th, 1859, the said Defendants paid thirty-six dollars as and for the interest thereon, and that the same was so received and appropriated.

That on or about February 12th, 1858, said Pease purchased of said Defendant one thousand bushels of grain at forty cents per bushel; that by agreement of parties said grain was to be stored by said Defendant till the first of the following June, and that when disposed of by said Pease, the proceeds thereof were to be applied and appropriated in satisfaction and discharge of the interest which should then be due at such rates as should be agreed upon between the parties, and the balance, if any, should be applied in reduction of the principal.

That on the 25th of July said parties made a final settlement of the interest due upon said note, and that said Pease proposed and Defendant assented to reduce the rate of interest from and after the payment of October 15th, 1858, to two per cent. per month, and that the proceeds of said grain being the sum of four hundred dollars, and a payment of twenty-four dollars made by said Defendant, were accordingly applied, endorsed and appropriated in payment and satisfaction of the interest upon said note from October 15th, 1858, at the rate of two per cent. per month, and the balance, being the sum of one hundred dollars, was endorsed and appropriated in reduction of the principal, and that upon an accounting and settlement between the parties the sum of nineteen hundred dollars was found due upon said note.

That each and every of the said several payments so received and endorsed as aforesaid, except the sum of one hundred dollars endorsed as principal were made as and for, and were appropriated at the several times of said payments by the Defendant upon and in satisfaction and discharge of the interest upon said note at the several rates hereinbefore mentioned, and were so received and appropriated by said Pease as and for and in satisfaction of said interest, with the express assent, knowledge and concurrence of said Defendant.

*Third.*—That each and every of the payments made and endorsed upon said note were made voluntarily by the said Defendant, and with a full knowledge of all the facts, and were received and appropriated by said Pease in good faith.

*Fourth.*—That no other payments either of principal or interest have been made upon said note except those endorsed thereon as aforesaid.

Second, I find as matter of law,—

1st. That the Plaintiffs are the lawful owners and holders of said note and mortgage ; that the aforesaid sum of money paid, accepted, endorsed and appropriated as and for interest having been all voluntarily paid as such with a full knowledge of all the facts and in good faith by both parties, cannot now be recovered back by the Defendant, Mills, or otherwise applied in payment and reduction of the principal of said note.

2nd. That the only issue presented by the pleading is the amount due on said note,—the complaint alleging a certain amount due and the answer denying it and alleging a less amount due, and that the issue must be determined by the principles of law applicable to the voluntary appropriation of payments.

Points and Authorities of Plaintiffs in Error.

I.—The Defendant, Mills, having permitted his partial payments to be endorsed as interest misled by statements of Pease and the decisions of this Court as to the amount collectable by law, is certainly as much entitled to relief as the party who had allowed the judgment to be recovered against him by default. The·whole matter is still open,—the case in court for the very purpose of ascertaining the amount due. *Bidwell vs. Whitney,* 4 *Minn. Rep., p.* 77 *and cases cited; Banker vs. Brent, ib.,* 521.

II.—As to the Defendants, Andrus & Bosworth, both as holders of the second mortgage and as judgment creditors, the amount of the lien must be determined by the notice given by the records, " as subsequent incumbrancers are presumed to have acquired their interests with reference to the existing liens on the premises of which they had notice, they are entitled to have payments applied so as to reduce those liens as they appear of record;" that is as against them only seven per cent. per annum can be claimed after maturity of the note in suit. *Whitacre et al., vs. Fuller et al.,* 5 *Minn. Rep., p.* 520; *Talcott vs. Marston,* 3 *Minn., p.* 339, and all the decisions under our interest laws.

2d. The fact that by the mortgage as recorded the note was

to draw five per cent. after due, cannot be regarded as notice to subsequent incumbrancers.

Points and Authorities of Defendant in Error.

I.—The mortgage fully disclosed the rate that the note drew, both before and after maturity. The contract was voidable at the election of the mortgagor only. *Bidwell vs. Whitney*, 4 *Minn.*, 76. The parol agreements were of course not binding upon Andrus & Bosworth, nor even upon Mills, until executed, and are only material as evidence of appropriation of the payments. The rate has been decreased from that which the mortgagor might have paid at his election.

II.—The issue made by the pleadings is solely that of payment, and this only is passed upon as a matter of fact by the Court. The equities of the Defendants are neither pleaded nor proved, and of course cannot avail them. *Peck vs. Mallams*, 10 *N. Y.*, 538.

III.—The Defendants can only succeed by establishing the *bona fides* of their purchase, and the want of notice. This plea must always be fully and specially pleaded. *Minor vs. Willoughby, et al.*, 3 *Minn.*, 225; 2 *Leading Cases in Eq.*, 156; 4 *Wis.*, 343.

IV.—So, too, it was incumbent on the Defendants to show that they had no notice, and did not assent to the appropriations made by the mortgagor, and also that the mortgagee had notice of their rights. A party may always deal with his immediate debtor without prejudice, unless it be shown that he had notice of the rights of others, and a registration of a subsequent deed is not even constructive notice. 7 *Cranch*, 34; 3 *Paige's Ch. Rep.*, 614, 649; 4 *Selden*, 271; 1 *Sandford*, 418; 2 *Barb. Ch.*, 151; 5 *Rawle*, 511; 6 *Barb*, 346; 16 *Vesey*, 300.

V.—The Defendants stand in the relation of sureties to the mortgagor, if, as they claim, they have an equity to have the incumbrance discharged by him, and must bring a knowledge of that fact home to the mortgagee. 1 *Leading Cases in Eq.*, 153-4; 3 *Paige*, 614, 649, *cited ante, and* 11 *Wend.* 312; 17 *Conn.*, 96.

VI.—All the payments up to, and including that of May 22, 1858, were made prior to the execution of the mortgage to Defendants, Andrus & Bosworth. The Plaintiff was, therefore, entirely justified in dealing with the debtor as they might agree, as no other rights could be prejudiced, and none existing, of course the mortgagee could have had no notice of them within the authorities last cited.

So, too, all the payments, and the final settlement and adjustment, were made prior to the rendition of the Defendants' judgment. The mortgage, then, is the only claim upon which Defendants can rely to impeach the payments made subsequent to May 22, 1858, and as to this, they must plead and prove not only a want of notice, but that they are purchasers for a valuable consideration paid before notice, and the nature of that consideration must be fully set out. A prior indebtedness would not be sufficient, nor the giving of notes, nor anything short of the actual payment of money. *Minor vs. Willoughby & Powers*, 3 *Minn.*, 225; *Comp. Stats.*, sec. 54, p. 404.

In all the foregoing particulars, therefore, the case differs fatally from that of *Whittacre vs. Fuller*, upon which the Defendants rely.

VII.—But the case of *Whittacre vs. Fuller* seems to have been but slightly considered by counsel, at least, and the only case relied on in support of the doctrine that the condition in the mortgage, referring to the terms and conditions of a note of even date therewith, was not sufficient to put a subsequent purchaser on inquiry, is *Frost vs. Beekman*, 1 *John. Ch. Rep* , 300; 15 *N. Y.*, 354.

In the case at bar this is not shown, and could not be, as it appears by the mortgage that the mortgagee resided in the same town with the mortgagor, and the note was made payable at his office in Faribault. By calling on him, therefore, the full particulars of the lien would have been ascertained, or if he had given false answers to any inquiries respecting it, they would have estopped him from contradicting them afterwards.

When a deed recites an instrument, a party taking under it is chargable with constructive notice of the contents of the instrument referred to. 6 *Watts*, 57; 1 *Story Eq. Jur.*, sec. 400;

2 *Greenleaf's Cruise*, 534, *note ;* 4 *Kent Com.* (7th *Ed.*) 189; 4 *Selden*, 271; 3 *Conn.*, 146.

The condition of the mortgage was amply sufficient to put subsequent purchasers on inquiry. 2 *Paige*, 202; 1 *Sumner*, 193; 2 *Dev. & Bat. Ch.*, 360; 16 *Vt.*, 179; 17 *id.*, 320; 22 *id.*, 274; 26 *id.*, 676; 1 *McLean*, 110; 2 *Dev. & Bat. Ch.*, 130; 7 *Richardson Eq.*, 54; 3 *Md. Ch. Decisions*, 448; *id.*, 537; 1 *Selden*, 301; 7 *Paige*, 421; 2 *Barr.*, 32; 7 *Barr.*, 340; 6 *Paige*, 35.

Mortgages, to secure future advances, although this was not disclosed by the record, have repeatedly been held valid as against subsequent incumbrancers without notice. 6 *Barb. Ch. R.*, 346; 24 *Pick.*, 270; 7 *Cranch*, 34.

So, also, notice of a charge to an indefinite amount, although the notice was inaccurate as to its extent, is sufficient. 6 *Hare*, 112, 124; 5 *Ir. Ch. Rep.*, 436; 1 *Hill. on Mortgages*, 672, 19.

VIII.—But in this case the notice was explicit, and the question is, the lien of Plaintiff's mortgage not having been increased, can the Defendants, Andrus & Bosworth, insist that payments, voluntarily made and appropriated by the joint assent of debtor and creditor to the payment of interest at a rate less than that required by the strict terms of the contract, shall be applied to the reduction of the principal. We deny it, because—

1st. Whatever equities the Defendants might have in the land mortgaged, the debtor's money was his own, and he might apply it to any purpose which suited his own views of honesty and propriety. The ownership of the money determines the right of appropriation. 1 *American Leading Cases*, 294.

The debtor, and upon his default the creditor, may apply a payment to a debt not due, (22 *Pick.*, 305), or to a debt barred by the statute of limitations, (5 *Bing. N. C.*, 455; 5 *Meeson & Wellsby*, 300), or to an equitable claim in preference to a legal one, (6 *Taunton*, 597, 607), or to a claim, the recovery of which is prohibited by statute, in preference to one which is not, and when sued upon the latter, the Court will not change the application to meet it, (34 *Maine*, 115), or to an illegal claim in preference to a legal one, (12 *Cush.*, 279; 31

*Maine,* 247), and a surety has no equity to control or change any application made by a creditor. *Ellsworth vs. Mitchell,* 31 *Maine,* 247; 1 *Pick.,* 332; 9 *Cowen,* 420; 15 *Conn.* 437.

BATCHELDER & BUCKHAM, Counsel for Plaintiffs in Error.

COLE & CASE, Counsel for Defendants in Error.

*By the Court*—FLANDRAU, J.—Nothing appears either in the pleadings or the admitted facts, to raise any question of homestead in the lands mortgaged, nor any other question, save whether the application of the several payments as made by the parties to the first incumbrance, is binding upon the subsequent incumbrancers. The Court below decided that it was, and we think the decision is correct.

The counsel for the Plaintiffs in Error is mistaken entirely in supposing that the case of *Whitacre et al. vs. Fuller et al.,* 5 *Minn. R.,* 508, is decisive of this. There, the first mortgage was silent upon the rate of interest that the debt it secured carried, and we held that the subsequent incumbrancers and *bona fide* purchasers, might presume that the debt bore but seven per cent., the legal rate. Here, however, the mortgage carries on its face full notice to all parties, who desire to invest on the security of the land, that the debt bears an exorbitant rate of interest before maturity, and a greater rate as damages if not paid.

A party taking a second mortgage under these circumstances, is aware that before and up to the maturity of the debt, the interest *must* be paid, no matter how high the rate, and that after the due date it *may* be paid by the debtor if he feels disposed to perform his agreement, and can only be avoided by him upon application to a court of equity for relief. We have frequently held that money paid under such a stipulation cannot be recovered back, which involves the idea that the stipulation, until relieved against, is valid, or in other words, it is voidable but not void, at the option of the debtor. Mills has treated it as binding upon him, and complied with it except so far as the mortgagee agreed to lessen the rate of interest, and we think he has no cause to com-

plain. Andrus & Bosworth are only interested in obtaining the amount of their liens out of the land, and nothing appears but that the land is amply competent to discharge them all. We can see no way in which equities could arise in favor of a second incumbrancer which would entitle him to relief against payments of this character, except in a case where the land was rendered inadequate to meet all its obligations by reason of the first being augmented by applying the payments to the interest, and even then, if there was a personal obligation resting on the debtor to pay the debt secured by the subsequent lien, no equities could arise as long as the debtor remained solvent, and able to respond to a deficit after the sale of the land. We do not mean to say that equities would arise in the case supposed, sufficient to overthrow the application of payments made as these were—we merely introduce it to show that they do not arise here.

Judgment affirmed.